IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>WARREN KENNETH PAXTON JR., in his official capacity as Attorney General of the State of Texas,<br><br>　　　　　　Defendant. | CIV. NO. 23-3363 |

---

**DECLARATION OF CHRISTOPHER D. DODGE IN SUPPORT OF
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

---

I, Christopher D. Dodge, declare as follows:

1.　　I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.　　I am a Counsel at Elias Law Group LLP in Washington, DC. I am a member of the bar in the State of New York, the Commonwealth of Massachusetts, and the District of Columbia. I am counsel for Media Matters for America and Eric Hananoki ("Plaintiffs") in this matter.

3.　　I submit this declaration in support of Plaintiffs' Motion for Temporary Restraining Order in the above-captioned matter.

4.　　A true and correct copy of the Civil Investigative Demand issued on November 21, 2023 by Texas Attorney General Warren Kenneth Paxton Jr. is attached as **Exhibit A**.

5.　　A true and correct copy of the November 20, 2023 press release from Attorney General Paxton's office describing the investigation is attached as **Exhibit B**.

6.      A true and correct copy of the certified transcript of Attorney General Paxton's November 28, 2023 interview with Benny Johnson is attached as **Exhibit C**.

7.      A true and correct copy of the certified transcript of Attorney General Paxton's November 21, 2023 interview with CNBC "Last Call" is attached as **Exhibit D**.

8.      A true and correct copy of Brief of Amici Curiae in *Exxon Mobile Corp., v., et al.*, Case No. Case 16-CV-00469-K, ECF. No. 63-2, is attached as **Exhibit E**.


Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Christopher Dooley Dodge*
Christopher Dooley Dodge

# Exhibit A



OFFICE OF THE ATTORNEY GENERAL
CONSUMER PROTECTION DIVISION

# CIVIL INVESTIGATIVE DEMAND

**To:**   **Media Matters for America**            *via FedEx 7741 8756 3037*
                                                   **Return Date: December 12, 2023**

**c/o**   **Angelo Carusone**
          **800 Maine Ave SW, Suite 500**
          **Washington, DC 20024**

Pursuant to this office's specific authority under § 17.61 of the Texas Deceptive Trade Practices – Consumer Protection Act, §§ 17.41-.63, Texas Business and Commerce Code ("DTPA"), Media Matters for America ("Media Matters") is hereby directed to produce the items listed in **"Exhibit A"** attached hereto.

You are to make available the documentary material described in **"Exhibit A"** to the undersigned Assistant Attorney General, or other authorized agent(s) identified by the Consumer Protection Division ("Division"), by the "Return Date" indicated above for inspection and copying. In lieu of producing the originals for inspection and copying at your principal place of business, you may deliver true copies of the requested documents to the Assistant Attorney General or Authorized Agent below at the Office of the Attorney General, 300 W 15th St, Austin, TX, 78701. **Contact one of the persons listed below upon receipt to discuss the logistics of producing the requested documents to the Division.**

The Division believes that Media Matters for America is in possession, custody, or control of documentary material relevant to the subject matter of an investigation of possible violations of §§ 17.46(a) and (b) of the DTPA, related to false, misleading, and/or deceptive practices in the State of Texas.

> **TAKE NOTICE THAT pursuant to section 17.62, Texas Business and Commerce Code, any person who attempts to avoid, evade, or prevent compliance, in whole or in part, with this directive by removing, concealing, withholding, destroying, mutilating, altering, or by any other means falsifying any documentary material may be guilty of a misdemeanor and on conviction is punishable by a fine of not more than $5,000.00 or by confinement in the county jail for not more than one year, or both.**

ISSUED THIS 21st day of November, 2023.

/s Levi Fuller                               **Authorized Agent**
Levi Fuller                                  Ryan Hanlan
Assistant Attorney General                   Investigator
(512) 936-1308                               (512) 936-3354

# Instructions

1. **Read These Instructions/Definitions.** Read these instructions and definitions carefully.

2. **Duty to Preserve Documents**. All documents and/or other data which relate to the subject matter or requests of this Civil Investigative Demand must be preserved. *Any ongoing, scheduled or other process of document or data destruction involving such documents or data must cease even if it is your normal or routine course of business for you to delete or destroy such documents or data and even if you believe such documents or data are protected from discovery by privilege or otherwise.* Failure to preserve such documents or data may result in legal action and may be regarded as spoliation of evidence under applicable law.

3. **Relevant Dates**. Unless otherwise noted, the requests in this Civil Investigative Demand require production of documents for each year from January 1, 2022 to the final date of your production of responsive documents, herein called "the relevant time period."

4. **Custody and Control.** In responding to this Civil Investigative Demand, you are required to produce not only all requested documents in your physical possession, but also all requested documents within your custody and control, including those within the possession of persons reasonably available to you or under your direction or control.

5. **Identification of Documents not in Custody or Control.** If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

   a.  The name of each author, sender, creator, and initiator of such document;

   b.  the name of each recipient, addressee, or party for whom such document was intended;

   c.  the date the document was created;

   d.  the date(s) the document was in use;

   e.  a detailed description of the content of the document;

   f.  the reason it is no longer in your possession, custody or control; and

   g.  the document's present whereabouts.

   If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the destruction or disposal.

6. **Privileged Documents**. If any responsive document is withheld, in whole or in part, under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document or partial document that you have withheld:

   a.  the document's control numbers;

   b.  all authors of the document;

   c.  all addressees of the document;

   d.  all recipients of the document or of any copies of the document, to the extent not included among the document's addressees;

   e.  the date of the document;

   f.  a description of the subject matter of the document sufficient to determine the applicability of the privilege;

   g.  the nature or type of the privilege that is being asserted for the document (e.g., "attorney-client privilege");

   h.  the specification(s) of the Demand to which the document is responsive;

   i.  the document control number(s) of any attachments to the document, regardless of whether any privilege is being asserted for such attachment(s); and

   j.  whether the document has been produced in redacted form, and if so, the range of the control numbers for the document.

7.  **Trade Secrets.**  It is your responsibility to clearly designate which, if any, of the requested documents contain trade secrets, in accordance with Section 17.61(f) of the Texas Business and Commerce Code.

8.  **Consult Before Producing Documents.**  Before processing or making copies of hard copy documents or electronically stored information in response to this Civil Investigative Demand, consult with the designated representative(s) of the Office of the Attorney General, ("OAG") identified above and reach agreement on the format and method of production.

Likewise, before producing any *original* documents, consult with one of the designated representatives of the OAG identified above to obtain approval. If you produce original documents, the OAG cannot guarantee their return.

9.  **You May Produce Copies.**  Subject to the consultation requirement noted above, you may submit photocopies (with color photocopies where necessary to interpret the document) in lieu of original hard-copy documents, provided that such copies are accompanied by an affidavit of an officer of Media Matters for America stating that the copies are true, correct, and complete copies of the original documents, and (if appropriate) were generated and maintained in the ordinary course of your business, and provided that where the original contains colored text or images, a color copy must be provided.

10. **Non-identical Copies to be Produced.**  Identical copies of responsive documents need not be produced. However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, different senders or recipients, etc. must be produced.

11. **No Redaction**. All materials or documents produced in response to this Civil Investigative Demand shall be produced, except as deemed privileged, in complete unabridged, unedited and unredacted form, even if portions may contain information not explicitly requested, or might include interim or final editions of a document.

12. **Documents to be Bates Numbered.**  Mark each page or electronic medium (e.g., disk, tape, or CD) with individual or corporate identification and eight-digit consecutive document control numbers (e.g., DOE-12345678; CORP-12345678).  Hardcopy bound pamphlets or books may be marked with a single identification and control number.  Documents as to which privilege is asserted are to also receive identification and control numbers.

If your production will be more than one box or piece of electronic media, number each box or electronic media, as well as the total number of boxes/media (e.g., box 1 of 13) and mark each with the name(s) of the person(s) whose files are contained therein, the requests(s) to which they are responsive, and the document control numbers contained therein.

13. **Document Organization**. *Each document and other tangible thing produced shall be clearly designated as to which request, and each sub-part of a request, that it satisfies.  The documents produced shall be identified and segregated to correspond with the number and subsection of the request.*

14. **Production of Electronic Documents.**  Unless otherwise agreed to in writing by the designated OAG representative, electronically stored information shall be produced in electronic form.  Before you prepare documents or information for production in electronic form in order to comply with this Civil Investigative Demand (for example, before you attempt to process electronically stored information or image hard copy documents), you must consult with the designated representative(s) of the OAG identified above and reach agreement regarding the format and method of production.

15. **Questions.**  Questions concerning this Civil Investigative Demand should be directed to Assistant Attorney General Levi Fuller at (512) 936-1308.

# Definitions

1. **"You," "your," "the business," "Media Matters for America,"** or **"Media Matters"** means Media Matters for America, their past and present officers, employees, agents and representatives, parents and predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and includes all persons and entities acting or purporting to act under the guidance or on behalf of any of the above. The terms "subsidiary," "affiliate," and "joint venture" refer to any firm in which there is total or partial ownership (25 percent or more) or control between the company and any other person or entity.

2. **"X," "X Corp.," "Twitter,"** or **"Twitter, Inc."** means X, their past and present officers, employees, agents and representatives, parents and predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and includes all persons and entities acting or purporting to act under the guidance or on behalf of any of the above.

3. **"Document"** means the original and all non-identical copies (whether different from the original because of notes, underlining, attachments, or otherwise) of all computer files, and all written, printed, graphic or recorded material of every kind, regardless of authorship.  It includes communications in words, symbols, pictures, photographs, sounds, films, and tapes, as well as electronically stored information, computer files, together with all codes and/or programming instructions and other materials necessary to understand and use such systems.  The term "computer files" includes information stored in or accessible through computers or other information retrieval systems and includes but is not limited to drafts of documents, metadata, embedded, hidden and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems, as well as spreadsheets and their underlying cell formulae and other codes.  Thus, you should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, phones, pagers, personal data/digital assistants, archival voice storage systems, group and collaborative tools, electronic messaging devices, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off your premises.  This definition covers electronic mail messages ("e-mail"), text messages, voice mail, and all other documents in the possession of you and/or your directors, officers, managers, or employees, whether located at their home or office, whether on work or personal devices.  Notice: Unless otherwise specified, the term "document" excludes bills of lading, invoices in non-electronic form, customs declarations, purchase orders, and other similar documents of a purely transactional nature.

4. **"Communication"** means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests, transcribes or records any such communication. This definition extends to and encompasses electronic communications on internal chat platforms such as Slack, Microsoft Teams, Google Chat, and other similar messaging platforms.

5. **"Entity"** means legal or business entity of any kind and includes, without limitation, corporations, partnerships, joint ventures, associations, governmental bodies, and trusts.

6. **"Evidencing"** means having any tendency to make the existence of any fact related to the request more probable than it would be without the evidence.

7. **"Identify"** means

    a.  Regarding an individual, to identify that individual's:

       i.  name;

      ii.  current or last known telephone numbers at business and home; and

     iii.  current or last known business and home addresses.

    b.  Regarding a person other than an individual, to identify:

       i.  its full name;

      ii.  the nature of its organization;

     iii.  the address and telephone number of its principal offices and, if applicable, the state in which it is incorporated; and

     iv.  its principal line of business or activity.

    c.  Regarding any other tangible thing, to identify:

       i.  what it is, giving a reasonably detailed description thereof;

      ii.  when, where, and how it was made, if applicable;

     iii.  who made it, if applicable; and

     iv.  its current custodian or the person that had last known possession, custody, or control thereof.

8.  **"Including"** means including, but not limited to.

9.  **"Person"** includes you and means any entity or natural person.

10.  **"Relate," "related,"** and **"relating"** mean being in any way legally, logically, or factually connected with the subject matter of the request at issue.

11.  The words **"and"** and **"or"** shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of the request, any document(s) that might be deemed outside its scope by another construction.

12.  Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the singular, and the neuter gender includes the masculine and the feminine.

# EXHIBIT A: DOCUMENTS TO BE PRODUCED

1. Produce documents sufficient to identify Media Matters for America's employee organizational chart.

2. Produce documents sufficient to identify all of Media Matters for America's sources of income originating in the State of Texas.

3. Produce documents sufficient to identify all of Media Matters for America's operational expenditures in the State of Texas.

4. Produce all documents related to internal and external communications by Media Matters for America regarding Elon Musk's purchase of X during the relevant time period.

5. Produce all documents related to internal and external communications by Media Matters for America regarding Linda Yaccarino during the relevant time period.

6. Produce documents sufficient to identify all current and past X accounts under the ownership, control, or operating at the behest of Media Matters for America.

7. Produce all documents related to internal and external communications relating to the article titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content" by Eric Hananoki.

8. Produce documents sufficient to identify all of Media Matters for America's owned, controlled, or authorized X accounts that were used to obtain, produce, or otherwise acquire the screenshot images contained in the article titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content" by Eric Hananoki.

9. Produce documents sufficient to identify all X accounts, profiles, and members followed by the X accounts identified in response to Demand Number 8, above.

10. Produce all of Media Matters for America's external communications with employees and representatives of X from November 1, 2023 to November 21, 2023.

11. Produce all of Media Matters for America's external communications with Apple Inc., International Business Machine Corporation (IBM), Bravo television network, NBCUniversal, Oracle Corporation, and Comcast Corporation, Lions Gate Entertainment Corporation, Warner Bros Discovery Inc., Paramount Pictures Corporation, and Sony Group Corporation from November 1, 2023 to November 21, 2023.

12. Produce documents sufficient to identify all direct and indirect sources of funding for all Media Matters for America operations involving X research or publications.

# Exhibit B

KEN PAXTON
ATTORNEY GENERAL *of* TEXAS

**November 20, 2023 | Press Release**

# Attorney General Ken Paxton Opens Investigation into Media Matters for Potential Fraudulent Activity

The Office of the Attorney General ("OAG") is opening an investigation into Media Matters for potential fraudulent activity. Under the Texas Business Organizations Code and the Deceptive Trade Practices Act, the OAG will vigorously enforce against nonprofits who commit fraudulent acts in or affecting the state of Texas.

Attorney General Paxton was extremely troubled by the allegations that Media Matters, a radical anti-free speech organization, fraudulently manipulated data on X.com (formerly known as Twitter).

"We are examining the issue closely to ensure that the public has not been deceived by the schemes of radical left-wing organizations who would like nothing more than to limit freedom by reducing participation in the public square," said Attorney General Paxton.

Back to Top

# Exhibit C



# Transcript of Recorded Conversation

**Case:** MMFA Litigation

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

In re: MMFA Litigation

RECORDED CONVERSATION

Job No.:  518338

Pages:  1 - 3

Transcribed by: Lauren Bishop

1          BENNY JOHNSON: So, this is obviously

2     horrifying. Devastating and comes in concert with

3     Elon Musk dropping and I quote, thermonuclear

4     lawsuit. On Media Matters, though it seems like

5     you're standing with the Missouri Attorney General,

6     do you encourage other republican attorney generals

7     to do this? We're -- we're so thankful that somebody

8     is just standing up and doing something. Where are

9     the rest of the republican AGs? There's got to be 20,

10    30 republican AGs in the country. Why are they so

11    quiet on issues like this?

12          KEN PAXTON: You know, that's a good

13    question. I -- I would -- I would encourage them to

14    look at this. They may have just become aware of it.

15    I mean it's a relatively new issue so hopefully over

16    the next couple weeks, you'll see other attorney

17    generals look at this and -- and I -- I would

18    encourage even democratic attorney generals. I know

19    they probably wont but they should because they

20    should care about free speech as much as we do.

21          (The recording was concluded.)

22

```
1                    CERTIFICATE OF TRANSCRIBER

2              I, Lauren Bishop, do hereby certify that

3     the transcript was prepared from the digital audio

4     recording of the foregoing proceeding; that said

5     proceedings were reduced to typewriting under my

6     supervision; that said transcript is a true and

7     accurate record of the proceedings to the best of my

8     knowledge, skills, and ability; and that I am neither

9     counsel for, related to, nor employed by any of the

10    parties to the case and have no interest, financial

11    or otherwise, in its outcome.

12

13        Lauren Bishop

14    _____

15    LAUREN BISHOP

16    Planet Depos,

17    December 8, 2023

18

19

20

21

22
```

## A

ability
3:8
about
2:20
accurate
3:7
ags
2:9, 2:10
any
3:9
attorney
2:5, 2:6, 2:16, 2:18
audio
3:3
aware
2:14

## B

because
2:19
become
2:14
benny
2:1
best
3:7
bishop
1:22, 3:2, 3:15

## C

care
2:20
case
3:10
certificate
3:1
certify
3:2
comes
2:2
concert
2:2
concluded
2:21
conversation
1:9

counsel
3:9
country
2:10
couple
2:16

## D

december
3:17
democratic
2:18
depos
3:16
devastating
2:2
digital
3:3
doing
2:8
dropping
2:3

## E

elon
2:3
employed
3:9
encourage
2:6, 2:13, 2:18
even
2:18

## F

financial
3:10
foregoing
3:4
free
2:20

## G

general
2:5
generals
2:6, 2:17, 2:18
good
2:12

## H

hereby
3:2
hopefully
2:15
horrifying
2:2

## I

interest
3:10
issue
2:15
issues
2:11
it's
2:15

## J

job
1:20
johnson
2:1

## K

ken
2:12
know
2:12, 2:18
knowledge
3:8

## L

lauren
1:22, 3:2, 3:15
lawsuit
2:4
litigation
1:7
look
2:14, 2:17

## M

matters
2:4
mean
2:15

media
2:4
missouri
2:5
mmfa
1:7
much
2:20
musk
2:3

## N

neither
3:8
new
2:15
next
2:16

## O

obviously
2:1
other
2:6, 2:16
otherwise
3:11
outcome
3:11
over
2:15

## P

pages
1:21
parties
3:10
paxton
2:12
planet
3:16
prepared
3:3
probably
2:19
proceeding
3:4
proceedings
3:5, 3:7

| Q | supervision | 5 | |
|---|---|---|---|
| | 3:6 | | |

**question**
2:13
**quiet**
2:11
**quote**
2:3

**R**

**record**
3:7
**recorded**
1:9
**recording**
2:21, 3:4
**reduced**
3:5
**related**
3:9
**relatively**
2:15
**republican**
2:6, 2:9, 2:10
**rest**
2:9

**S**

**said**
3:4, 3:6
**see**
2:16
**seems**
2:4
**should**
2:19, 2:20
**signature-p1ka1**
3:13
**skills**
3:8
**somebody**
2:7
**something**
2:8
**speech**
2:20
**standing**
2:5, 2:8

**supervision**
3:6

**T**

**thankful**
2:7
**that's**
2:12
**there's**
2:9
**thermonuclear**
2:3
**transcribed**
1:22
**transcriber**
3:1
**transcript**
3:3, 3:6
**true**
3:6
**typewriting**
3:5

**U**

**under**
3:5

**W**

**weeks**
2:16
**we're**
2:7
**wont**
2:19

**Y**

**you'll**
2:16
**you're**
2:5

**2**

**20**
2:9
**2023**
3:17

**3**

**30**
2:10

**5**

**518338**
1:20

# Exhibit D



# Transcript of Recorded Conversation

**Case:** MMFA Litigation

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

In re: MMFA Litigation

RECORDED CONVERSATION

Job No.: 517865

Pages: 1 - 6

Transcribed by: Lauren Bishop

1          MALE SPEAKER 1: Let's speak with

2    Republican Attorney General of Texas, Ken Paxton.

3    Ken, Attorney General, thank you very much for

4    joining us. What specifically are you looking for in

5    this investigation?

6          KEN PAXTON: We have an obligation. I have

7    four different responsibilities into the Texas

8    Constitution. One of those is to look at any

9    fraudulent activity of a corporation and then we also

10    oversee charitable organizations. So in this case

11    with Media Matters being charitable organization,

12    nonprofit, we have the responsibility to make sure

13    that doing things that are inappropriate for

14    violating state law. We've started off with asking

15    them questions and we're going to ask them questions

16    and whether that leads to anything else will be

17    determined by their actual behavior and what

18    information they turn over.

19          MALE SPEAKER 1: There are already people

20    of course questioning the -- I won't say the

21    jurisdiction, but Texas' involvement given that X

22    formerly known as Twitter, is a California-based

1    corporation. What is the people and the state of

2    Texas' interest in this?

3           KEN PAXTON: Well, look, I mean X operates

4    in Texas. It operates all the world and Media

5    Matters, what they do to X, the information that they

6    -- they provide effects Texas. And so anything that

7    affects Texans, we have an obligation to look at and

8    that's -- that's what we're doing. So, yeah, it

9    doesn't matter whether they're incorporated, but

10   they're doing business and Texas becomes our

11   interest.

12          MALE SPEAKER 1: Well, what -- and it's

13   very complicated and of course, this is TV, so we

14   don't have a lot of time, but as I understand it

15   Attorney General Paxton, what X is alleging and --

16   and by the way Media Matters is denying -- want to

17   make that clear. Is that Media Matters created a lot

18   of fake accounts or a bunch of different accounts

19   followed a bunch of accounts that might be around or

20   involved in hateful content and sort of almost gained

21   the algorithm to force a specific result. They deny

22   it. Let's say they actually did that. Is that illegal

1    in any way?

2            KEN PAXTON: Yeah. I mean it can be.

3    Depends on exactly what they did. If it's viewed as

4    fraudulent activity under Texas law, then they can be

5    accountable to the state of Texas for that. I mean,

6    the reality is we're also -- we're in a lawsuit with

7    Twitter. We've been in a lawsuit with them for

8    several years involving kind of this similar

9    information that they might have created fake

10   accounts several years ago that were deceptively

11   providing information to advertisers and consumers

12   about how big their audience is. So we've looked at

13   actually both sides.

14           MALE SPEAKER 1: Yeah. Because there are

15   just regular users that probably have multiple

16   accounts for multiple different -- multiple different

17   reasons. Would this be more of a criminal situation

18   or a civil situation because I can -- I can go from A

19   to Z if -- if the allegations are accurate you're

20   damaging X's business by basically doing this and

21   then writing about it and then spooking advertisers

22   away.

1          KEN PAXTON: Yeah. So for us we don't have

2    any authority to investigate or do anything

3    criminally unless we're referred that by a local

4    district attorney in Texas. So district attorney in

5    Texas with to do the investigation, refer us to

6    either investigation or prosecution. Until then

7    everything that we're doing is completely civil

8    related to what -- exactly what you're talking about.

9          (The recording was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

1              CERTIFICATE OF TRANSCRIBER

2         I, Lauren Bishop, do hereby certify that

3    the transcript was prepared from the digital audio

4    recording of the foregoing proceeding; that said

5    proceedings were reduced to typewriting under my

6    supervision; that said transcript is a true and

7    accurate record of the proceedings to the best of my

8    knowledge, skills, and ability; and that I am neither

9    counsel for, related to, nor employed by any of the

10   parties to the case and have no interest, financial

11   or otherwise, in its outcome.

12        *Lauren Bishop*

13

14

15   _____

16   LAUREN BISHOP

17   Planet Depos,

18   December 6, 2023

19

20

21

22

**A**

ability
6:8
about
4:12, 4:21, 5:8
accountable
4:5
accounts
3:18, 3:19,
4:10, 4:16
accurate
4:19, 6:7
activity
2:9, 4:4
actual
2:17
actually
3:22, 4:13
advertisers
4:11, 4:21
affects
3:7
ago
4:10
algorithm
3:21
all
3:4
allegations
4:19
alleging
3:15
almost
3:20
already
2:19
also
2:9, 4:6
any
2:8, 4:1, 5:2,
6:9
anything
2:16, 3:6, 5:2
around
3:19
asking
2:14

attorney
2:2, 2:3, 3:15,
5:4
audience
4:12
audio
6:3
authority
5:2
away
4:22

**B**

basically
4:20
because
4:14, 4:18
becomes
3:10
been
4:7
behavior
2:17
being
2:11
best
6:7
big
4:12
bishop
1:22, 6:2, 6:16
both
4:13
bunch
3:18, 3:19
business
3:10, 4:20

**C**

california-based
2:22
case
2:10, 6:10
certificate
6:1
certify
6:2
charitable
2:10, 2:11

civil
4:18, 5:7
clear
3:17
completely
5:7
complicated
3:13
concluded
5:9
constitution
2:8
consumers
4:11
content
3:20
conversation
1:9
corporation
2:9, 3:1
counsel
6:9
course
2:20, 3:13
created
3:17, 4:9
criminal
4:17
criminally
5:3

**D**

damaging
4:20
december
6:18
deceptively
4:10
deny
3:21
denying
3:16
depends
4:3
depos
6:17
determined
2:17

different
2:7, 3:18, 4:16
digital
6:3
district
5:4
doing
2:13, 3:8,
3:10, 4:20, 5:7

**E**

effects
3:6
either
5:6
else
2:16
employed
6:9
everything
5:7
exactly
4:3, 5:8

**F**

fake
3:18, 4:9
financial
6:10
followed
3:19
force
3:21
foregoing
6:4
formerly
2:22
four
2:7
fraudulent
2:9, 4:4

**G**

gained
3:20
general
2:2, 2:3, 3:15
given
2:21

| | | | |
|---|---|---|---|
| **go**<br>4:18<br>**going**<br>2:15 | **knowledge**<br>6:8<br>**known**<br>2:22 | **more**<br>4:17<br>**much**<br>2:3<br>**multiple**<br>4:15, 4:16 | **proceeding**<br>6:4<br>**proceedings**<br>6:5, 6:7<br>**prosecution**<br>5:6<br>**provide**<br>3:6<br>**providing**<br>4:11 |
| **H** | **L** | **N** | **Q** |
| **hateful**<br>3:20<br>**hereby**<br>6:2 | **lauren**<br>1:22, 6:2, 6:16<br>**law**<br>2:14, 4:4<br>**lawsuit**<br>4:6, 4:7<br>**leads**<br>2:16<br>**let's**<br>2:1, 3:22<br>**litigation**<br>1:7<br>**local**<br>5:3<br>**look**<br>2:8, 3:3, 3:7<br>**looked**<br>4:12<br>**looking**<br>2:4<br>**lot**<br>3:14, 3:17 | **neither**<br>6:8<br>**nonprofit**<br>2:12 | **questioning**<br>2:20<br>**questions**<br>2:15 |
| **I** | | **O** | **R** |
| **illegal**<br>3:22<br>**inappropriate**<br>2:13<br>**incorporated**<br>3:9<br>**information**<br>2:18, 3:5, 4:9,<br>4:11<br>**interest**<br>3:2, 3:11, 6:10<br>**investigate**<br>5:2<br>**investigation**<br>2:5, 5:5, 5:6<br>**involved**<br>3:20<br>**involvement**<br>2:21<br>**involving**<br>4:8 | | **obligation**<br>2:6, 3:7<br>**one**<br>2:8<br>**operates**<br>3:3, 3:4<br>**organization**<br>2:11<br>**organizations**<br>2:10<br>**otherwise**<br>6:11<br>**outcome**<br>6:11<br>**over**<br>2:18<br>**oversee**<br>2:10 | **reality**<br>4:6<br>**reasons**<br>4:17<br>**record**<br>6:7<br>**recorded**<br>1:9<br>**recording**<br>5:9, 6:4<br>**reduced**<br>6:5<br>**refer**<br>5:5<br>**referred**<br>5:3<br>**regular**<br>4:15<br>**related**<br>5:8, 6:9<br>**republican**<br>2:2<br>**responsibilities**<br>2:7<br>**responsibility**<br>2:12<br>**result**<br>3:21 |
| **J** | **M** | **P** | |
| **job**<br>1:20<br>**joining**<br>2:4<br>**jurisdiction**<br>2:21 | **make**<br>2:12, 3:17<br>**male**<br>2:1, 2:19,<br>3:12, 4:14<br>**matter**<br>3:9<br>**matters**<br>2:11, 3:5,<br>3:16, 3:17<br>**mean**<br>3:3, 4:2, 4:5<br>**media**<br>2:11, 3:4,<br>3:16, 3:17<br>**might**<br>3:19, 4:9<br>**mmfa**<br>1:7 | **pages**<br>1:21<br>**parties**<br>6:10<br>**paxton**<br>2:2, 2:6, 3:3,<br>3:15, 4:2, 5:1<br>**people**<br>2:19, 3:1<br>**planet**<br>6:17<br>**prepared**<br>6:3<br>**probably**<br>4:15 | **S** |
| **K** | | | **said**<br>6:4, 6:6 |
| **ken**<br>2:2, 2:3, 2:6,<br>3:3, 4:2, 5:1<br>**kind**<br>4:8 | | | |

| | | |
|---|---|---|
| **say**<br>2:20, 3:22 | **things**<br>2:13 | **we're**<br>4:6 |
| **several**<br>4:8, 4:10 | **time**<br>3:14 | **whether**<br>2:16, 3:9 |
| **sides**<br>4:13 | **transcribed**<br>1:22 | **world**<br>3:4 |
| **signature-p1kal**<br>6:12 | **transcriber**<br>6:1 | **writing**<br>4:21 |
| **similar**<br>4:8 | **transcript**<br>6:3, 6:6 | **X** |
| **situation**<br>4:17, 4:18 | **true**<br>6:6 | **x's**<br>4:20 |
| **skills**<br>6:8 | **turn**<br>2:18 | **Y** |
| **sort**<br>3:20 | **tv**<br>3:13 | **yeah**<br>3:8, 4:2, 4:14,<br>5:1 |
| **speak**<br>2:1 | **twitter**<br>2:22, 4:7 | **years**<br>4:8, 4:10 |
| **speaker**<br>2:1, 2:19,<br>3:12, 4:14 | **typewriting**<br>6:5 | **1** |
| **specific**<br>3:21 | **U** | **1**<br>2:1, 2:19,<br>3:12, 4:14 |
| **specifically**<br>2:4 | **under**<br>4:4, 6:5 | **2** |
| **spooking**<br>4:21 | **understand**<br>3:14 | **2023**<br>6:18 |
| **started**<br>2:14 | **unless**<br>5:3 | **5** |
| **state**<br>2:14, 3:1, 4:5 | **until**<br>5:6 | **517865**<br>1:20 |
| **supervision**<br>6:6 | **users**<br>4:15 | |
| **sure**<br>2:12 | **V** | |
| **T** | **viewed**<br>4:3 | |
| **talking**<br>5:8 | **violating**<br>2:14 | |
| **texans**<br>3:7 | **W** | |
| **texas**<br>2:2, 2:7, 3:4,<br>3:6, 3:10, 4:4,<br>4:5, 5:4, 5:5 | **want**<br>3:16 | |
| **texas'**<br>2:21, 3:2 | **way**<br>3:16, 4:1 | |
| **thank**<br>2:3 | **we're**<br>2:15, 3:8, 5:3,<br>5:7 | |
| | **we've**<br>2:14, 4:7, 4:12 | |

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 4:16-cv-00469-K |
| | ) | |
| MAURA TRACY HEALEY, | ) | |
| Attorney General of Massachusetts, | ) | |
| in her official capacity, | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**BRIEF OF TEXAS, LOUISIANA, SOUTH CAROLINA, ALABAMA, MICHIGAN, ARIZONA, WISCONSIN, NEBRASKA, OKLAHOMA, UTAH, AND NEVADA AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# Table of Contents

Interest of *Amici Curiae* And Background ......................................................1

Argument ........................................................................................................2

   I.   Attorneys General should act impartially. .................................................2

       A.   Attorneys General should not employ legal power to tip the
          scales in a policy debate. ........................................................................3

          1.   Targeting critics. ...................................................................4

          2.   Abusing subpoena power.......................................................5

       B.   Climate change is the subject of legitimate international
          debate. ....................................................................................................6

   II.  Politicized investigations undermine public confidence............................9

Conclusion ........................................................................................................9

## INTEREST OF *AMICI CURIAE* AND BACKGROUND

Exxon Mobil Corporation (Exxon) is challenging the validity of a Civil Investigative Demand (CID), a state civil administrative subpoena, issued by the Attorney General of Massachusetts (Massachusetts). Massachusetts dispatched the CID to investigate supposed violations of consumer protection laws through Exxon's marketing and sale of fossil fuel-derived products and securities. Exxon is asking the Court to issue an injunction prohibiting Massachusetts from enforcing the CID.

*Amici* possess sovereign authority to investigate violations of law. As chief legal officers, they have long used their power—including the issuance of CIDs—to determine whether unlawful conduct occurred. However, this power does not include the right to engage in unrestrained, investigative excursions to promulgate a social ideology, or chill the expression of points of view, in international policy debates.

The concerns of *Amici* and others regarding Massachusetts's tactics are expressed in a recent open letter.[1] In it, the actions of Massachusetts and others are condemned, as "this effort by our colleagues to police the global warming debate through the power of the subpoena is a grave mistake." The signatories, representing a wide range of viewpoints on climate change, "agree on at least one thing—this is not a question for the courts. Using law enforcement authority to resolve a public policy debate undermines the trust invested in our offices and threatens free speech."[2] As most recognize, "vigorous debate exists in this country regarding the risks of climate change and the appropriate response to those risks. Both sides are well-funded and sophisticated public policy participants. Whatever our country's response,

---

[1] Open Letter from Attorneys General (Luther Strange, Alabama; Bill Schuette, Michigan; Ken Paxton, Texas; Craig Richards, Alaska; Doug Peterson, Nebraska; Sean Reyes, Utah; Mark Brnovich, Arizona; Adam Laxalt, Nevada; Brad Schimel, Wisconsin; Leslie Rutledge, Arkansas; Scott Pruitt, Oklahoma; Jeff Landry, Louisiana; Alan Wilson, South Carolina) dated June 15, 2016, *available online at* http://www.ago.state.al.us/news/852.pdf.

[2] *Id*. at p.1.

it will affect people, communities, and businesses that all have a right to participate in this debate." Thus, attorneys general should "stop policing viewpoints."[3]

*Amici* are concerned about the unconstitutional use of investigative powers. They have an interest in preserving their roles as evenhanded enforcers of the law and, thus, have direct and vital interests in the issues before the Court.

ARGUMENT

Attorneys General have a constitutional duty to act dispassionately in the execution of their office. The Supreme Court has explained that attorneys representing the public do not represent an ordinary party in litigation, but "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest , . . . is not that it should win a case but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). This distinctive role of the prosecutor is also expressed the Model Code of Professional Responsibility. MODEL CODE OF PROF'L RESPONSIBILITY EC 7-13 (1982) ("The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."). Massachusetts crossed both legal and ethical lines with its CID.

## I. Attorneys General should act impartially.

Massachusetts's investigation is the product of a cultural movement "committed to aggressively protecting and building upon the recent progress the United States has made in combatting climate change."[4] And the common interest agreement of the powers aligned on this axis of ideology underscores the partiality of their endeavor, as they seek to "limit climate change and ensur[e] the dissemination

---

[3] *Id.*
[4] Press Release, New York State Attorney General, *A.G. Schneiderman, Former Vice President Al Gore And A Coalition Of Attorneys General From Across The Country Announce Historic State-Based Effort To Combat Climate Change* (March 29, 2016) (*available online at* http://www.ag.ny.gov/press-release/ag-schneiderman-former-vice-president-al-gore-and-coalition-attorneys-general-across).

2

of accurate information about climate change." ECF No. 57 at 3.[5] And Defendant acknowledges that the issuance of the CID is part of an "aggressive approach."[6]

While *amici* have authority to conduct investigations regarding consumer protection, fraud, and deceptive trade practices, these investigations must be supported by a "reasonable belief" that there has been, or is about to be, unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. *See, e.g.*, TEX. BUS. & COM. CODE §§ 17.46, 17.47, 17.60, 17.61. And while the government's power "to protect people against fraud" has "always been recognized in this country and is firmly established," *Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 190 (1948), "[s]imply labeling an action one for 'fraud,' of course, will not carry the day," *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003).

## A.  Attorneys General should not employ legal power to tip the scales in a policy debate.

The authority attorneys general have to investigate fraud does not allow them to encroach on the constitutional freedom of others to engage in an ongoing public policy debate of international importance. Thus, government action that restricts or chills speech because of the message embodied within that speech contravenes the First Amendment. Indeed, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). The First Amendment generally prevents government from proscribing speech, *see, e.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 309–311 (1940), or even expressive conduct, *see, e.g.*, *Texas v. Johnson*, 491

---

[5] This ideology was on full display at the March 29, 2016 press conference of the so-called "AG's United for Clean Power," characterized as "the beginning of the end of our addiction to fossil fuel and the degradation of our planet." Attorney General Schneiderman, Press Conference, AGs United for Clean Power (March 29, 2016) (confirming subpoena to ExxonMobil) (*video available online at* http://www.ag.ny.gov/press-release/ag-schneiderman-former-vice-president-al-gore-and-coalition-attorneys-general-across). Former Vice President Al Gore alleged that commercial interests (such as the Plaintiff) are "committing fraud in their communications . . . ." *Id.*

[6] *Id.*

U.S. 397, 406 (1989), for the mere disapproval of the ideas expressed. Here, the chilling effect of Massachusetts's CID should be of concern since the "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury . . . ." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The heart of viewpoint discrimination is the government preferring one message to another. But "[t]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984); *see also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Cornelius v. NAACP*, 473 U.S. 788, 806 (1985). Viewpoint discrimination occurs when "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004).

While Massachusetts claims an interest in consumer protection as the basis for its CID, the Supreme Court has been clear that proffering what may be on its face "reasonable grounds" for the action does "not save a regulation that is in reality a facade for viewpoint-based discrimination." *Cornelius*, 473 U.S. at 811.

### 1.    Targeting critics.

The First Amendment is concerned with "the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas." *Hill v. Colorado*, 530 U.S. 703, 719 (2000). Thus, it stands as a bulwark against Government action designed to suppress ideas or information, or to manipulate the public debate through coercion rather than persuasion. *See Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 510 (5th Cir. 2009).

Using CIDs to suppress policy debates is like imposing prior restraints on speech. Governmentally imposed prior restraints on speech are tantamount to censorship. *See Near v. Minnesota*, 283 U.S. 697, 713, (1931); *cf. Fernandes v.*

*Limmer*, 663 F.2d 619, 632 (5th Cir. Unit A Dec. 1981). Massachusetts labeling its so-called investigation (into an unsettled area of science and public policy) as related to "fraud" certainly "raise[s] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991).

But if our society refuses to tolerate *both* the proponents and critics of ideas vying for acceptance, then the marketplace of ideas becomes a mere oligarchy of consumption. As Justice Holmes put it:

> But when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas—that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out.

*Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).

### 2.   Abusing subpoena power.

The Fourth Amendment limits the scope of administrative subpoenas. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–11 (1946). Where subpoenaed materials may be protected by the First Amendment, the requirements of the Fourth Amendment are applied with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476, 485 (1965). As such, so-called "fishing expeditions," like this one, are proscribed and "[i]t is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924).

Massachusetts's abuse of its subpoena power runs afoul of the First Amendment. *See, e.g., AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003) (citing *Buckley v. Valeo*, 424 U.S. 1, 64–68 (1976) (disclosure of campaign contributions); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462–63 (1958) (disclosure of

5

membership lists)). A First Amendment privilege against disclosures exists where such "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009) (quotation omitted).

 For example, subpoenas seeking investigative notes as well as the names of contacts have been held to be an invalid chilling of the free exercise of political speech and association under the First Amendment. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (finding "invalid" under First Amendment "subpoenas demanding that [a] paper . . . disclose its reporters' notes and reveal information about anyone who visited the New Times's [sic] website" because subpoenas would "chill speech"); *see also Pebble Ltd. P'ship v. EPA*, 310 F.R.D. 575, 582 (D. Alaska 2015) (subpoenas are invalid when they have "the tendency to chill the free exercise of political speech and association which is protected by the First Amendment").

These protections afforded by the Constitution protect us and our freedom to engage in open and candid discussions about significant issues. But the mere existence of those very discussions is threatened by the chill of subpoenas, like Massachusetts's CID, hanging in the air. Thus, not only is Massachusetts attempting to silence Exxon through the issuance and threat of compelling a response to the CID, this very action harms everyone, stifling consumers and those seeking information in order to evaluate various viewpoints in this public policy debate.

### B. Climate change is the subject of legitimate international debate.

Massachusetts presumes that the scientific debate regarding climate change is somehow settled, along with the related and equally important public policy debate on how to respond to what science has found. Yet, neither is true. The clearest and most undeniable fact about climate change is that, like so many other areas of science and public policy, the debate is unsettled, the research far from complete, and the

path forward unclear. *Amici* agree that "[s]cientists continue to disagree about the degree and extent of global warming and its connection to the actions of mankind,"[7] as do many others. Moreover, science does not teach the obvious public policy response to its data and findings, it merely provides a starting point.

Modern science helps us better understand our world. It constantly subjects to scrutiny various hypotheses against objective data. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). However, because it is almost never possible for all relevant data to be marshaled, scientific proclamations are always subject to change because of new data, enhanced measurements, or other unforeseen factors. *Cf.* Karl Popper, The Logic of Scientific Discovery 44, 47 (1959). Thus, "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994)

Accordingly, the intersection of science, law, and public policy should be approached with caution and objectivity. Unfortunate results take root when government invests itself in only one side of a scientific debate since "bad ideas can persist in science for decades, and surrounded by myrmidons of furious defenders they can turn into intolerant dogmas."[8] Unfortunately,

---

[7] Scott Pruitt and Luther Strange, *The Climate-Change Gang*, National Review (May 17, 2016), *available online at* http://www.national review.com/article/435470/climate-change-attorneys-general-overstepping-their-authority.

[8] Matt Ridley, *The Climate Wars and the Damage to Science,* GWPF Essay 3 at p.3 (Global Warming Policy Foundation 2015), *available online at* http://www.thegwpf.com/content/uploads/2015/11/climate-wars.pdf. In addition to being former Science Editor of the Economist, "Matt Ridley is one of the world's foremost science writers. His books have sold over a million copies and been translated into 30 languages. His new book The Evolution of Everything was published in 2015. He is a member of the [Global Warming Policy Foundation]'s Academic Advisory Council. As a landowner, he receives a way-leave income from a coal-mining company." In the words of Ridley,

I am not a full sceptic of climate change, let alone a 'denier'. I think carbon-dioxide induced warming during this century is likely, though I think it is unlikely to prove rapid and dangerous. So I don't agree with those who say the warming is all natural, or all driven by the sun, or only an artefact of bad measurement, but nor do I think anything excuses bad scientific practice in support of the carbon dioxide theory, and every time one of these scandals erupts and the scientific establishment asks us to ignore it, I wonder if the extreme sceptics are not

[t]his is precisely what has happened with the climate debate and it is at risk of damaging the whole reputation of science. The 'bad idea' in this case is not that climate changes, nor that human beings influence climate change; but that the impending change is sufficiently dangerous to require urgent policy responses. In the 1970s, when global temperatures were cooling, some scientists could not resist the lure of press attention by arguing that a new ice age was imminent. Others called this nonsense and the World Meteorological Organization rightly refused to endorse the alarm. That's science working as it should. In the 1980s, as temperatures began to rise again, some of the same scientists dusted off the greenhouse effect and began to argue that runaway warming was now likely. At first, the science establishment reacted skeptically and a diversity of views was aired. It's hard to recall now just how much you were allowed to question the claims in those days.[9]

Even the premise that "97% of all climate scientists agree on climate change" is argued by Ridley to be pseudo-science. The self-serving conclusion that "97% of all climate scientists agree on climate change" is derived from a poll involving only seventy-nine scientists[10]—hardly a statistically-relevant sample. Moreover, of those seventy-nine scientists, 97% believe that climate change is man-made—not that it was dangerous.[11] "A more recent poll of 1854 members of the American Meteorological Society found the true number is 52 per cent."[12] Indeed,

there has been a systematic and thorough campaign to rule out the middle ground as heretical: not just wrong, but mistaken, immoral and beyond the pale. That's what the word 'denier', with its deliberate connotations of Holocaust denial, is intended to do. For reasons I do not fully understand, journalists have been shamefully happy to go along with this fundamentally religious project. Politicians love this polarizing because it means they can attack a straw man.[13]

---

on to something. I feel genuinely betrayed by the profession that I have spent so much of my career championing.
*Id.* at p.10.

[9] *Id.* at p.4.
[10] *Id.* at p.7.
[11] *Id.*
[12] *Id.*
[13] *Id.* at p.6.

## II.   Politicized investigations undermine public confidence.

The transcript of the press conference of the "AG's United for Clean Power" demonstrates that Massachusetts commenced its investigation precisely for the reasons the First Amendment forbids.[14] "It is one thing to use the legal system to pursue public policy outcomes; but it is quite another to use prosecutorial weapons to intimidate critics, silence free speech, or chill the robust exchange of ideas."[15]

Allowing government law enforcement officials to violate constitutional rights is to "violate the sacred trust of the people . . . ." *United States v. Costa*, 356 F. Supp. 606, 609 (D.D.C. 1973). It undermines "the right of the people to be secure in their persons, houses, papers and effects, and would obliterate one of the most fundamental distinctions between our form of government, where officers are *under* the law, and the police-state where they *are* the law." *Johnson v. United States*, 333 U.S. 10, 17 (1948) (emphasis added).

Regrettably, history is embroiled with examples where the legitimate exercise of law enforcement is soiled with political ends rather than legal ones. Massachusetts seeks to repeats that unfortunate history. That the statements and workings of the "AG's United for Clean Power" are entirely one-sided, and target only certain participants in the climate change debate, speaks loudly enough.[16]

### Conclusion

*Amici* aver that the Court should grant Exxon's motion for preliminary relief.

---

[14] *See* n.5, *supra.*

[15] Press Release, Louisiana Department of Justice, Attorney General Jeff Landry Slams Al Gore's Coalition (Mar. 30, 2016) (*available online at* https://www.ag.state.la.us/Article/2207/5).

[16] "[T]his fraud investigation targets only 'fossil fuel companies' and only statements minimizing climate change risks. If it is possible to minimize the risks of climate change, then the same goes for exaggeration. If minimization is fraud, exaggeration is fraud." *See* n.1, *supra,* at p.2. It is also worth noting that "[e]leven of the 17 attorneys general who participated [in the "AG's United for Clean Power" press conference] are the same folks who took part in the 2010 sue-and-settle lawsuit that used federal courts to try to force the adoption of the federal energy regulations that became the EPA's 'Power Plan.'" Michael Batasch, *Kansas AG takes on Al Gore's Alarmism – Won't Join Anti-Exxon "Publicity Stunt,"* The Daily Caller (Apr. 4, 2016), *available online at* http://dailycaller.com/2016/04/04/kansas-ag-takes-on-al-gores-alarmism-wont-join-ant-exxon-publicity-stunt.

Respectfully submitted this the 8th day of September, 2016,

JEFF LANDRY
Attorney General of Louisiana

ALAN WILSON
Attorney General of South Carolina

LUTHER STRANGE
Attorney General of Alabama

BILL SCHUETTE
Attorney General of Michigan

MARK BRNOVICH
Attorney General of Arizona

BRAD SCHIMEL
Attorney General of Wisconsin

DOUG PETERSON
Attorney General of Nebraska

SCOTT PRUITT
Attorney General of Oklahoma

SEAN REYES
Attorney General of Utah

ADAM LAXALT
Attorney General of Nevada

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General

*/s/ Andrew D. Leonie*
ANDREW D. LEONIE
Associate Deputy Attorney General for the
Office of Special Litigation
Andrew.Leonie@texasattorneygeneral.gov

AUSTIN R. NIMOCKS
Associate Deputy Attorney General for the
Office of Special Litigation
Austin.Nimocks@texasattorneygeneral.gov

MICHAEL TOTH
Senior Counsel for the Office of Special
Litigation

Office of Special Litigation
Texas Attorney General's Office
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
Tel: 512-936-1414
Fax: 512-936-0545

*ATTORNEYS FOR AMICI CURIAE*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Andrew D. Leonie III*
Andrew D. Leonie III
SBOT No. 12216500
